UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
COLGATE-PALMOLIVE COMPANY,

                Plaintiff,                09 Civ. 6787 (SHS) (DF)

    -against-                         **ORDER**

JOHNSON & JOHNSON and
MCNEIL-PPC, INC.,

                Defendants.
------------------------------------------------------------------X

**DEBRA FREEMAN, United States Magistrate Judge:**

In this action, which has been referred to me for general pretrial supervision, plaintiff Colgate-Palmolive Company ("Plaintiff") alleges, among other things, that defendants Johnson & Johnson and McNeil-PPC, Inc. (collectively, "Defendants") are infringing Plaintiff's "Total" and "Colgate Total" trademarks (which Plaintiff currently uses on toothpaste and other oral-care products), by using the mark "Listerine Total Care" on competing or related oral-care products. (*See generally* Amended Complaint, dated Nov. 13, 2009 (Dkt. 16).) Plaintiff asserts federal and state-law claims for trademark infringement and dilution, unfair competition, false endorsement, false designation of origin, deceptive trade practices, and unjust enrichment. (*See id.* at ¶¶ 75-102.)

Currently before this Court are two motions to compel discovery, as well as requests by the parties for an extension of the discovery deadlines. In particular, Defendants seek an order compelling Plaintiff (1) to produce documents and information regarding the creation, selection, derivation, design and/or development of its "Total" and "Colgate Total" marks and products, (2) to produce documents and information regarding its intended future use of its "Total" and

"Total Care" marks on existing products (meaning the same types of products on which Plaintiff is currently using those marks), and (3) to withdraw its objection to disclosing the "specific nature" of knowledge possessed by witnesses. (*See* Letter to the Court from John Chesney, Esq., dated Aug. 23, 2010 ("Def. Mot.") (Dkt. 34).) Plaintiff, for its part, seeks to compel Defendants to produce documents and information regarding Defendants' Spanish-language "Listerine Cuidado Total" mark. (*See* Letter to the Court from Johanna Schmitt, Esq., dated Sept. 1, 2010 ("Pl. Opp. & Cross-Mot.") (Dkt. 35).)[1] Finally, both parties have requested that the Court extend the discovery deadlines, although they have submitted differing proposals for a modified schedule.

As set forth below, the pending motions to compel are granted in part and denied in part. As to scheduling, the parties are directed to confer in good faith and to submit a joint proposal that will allow for the completion of the specific discovery permitted by this Order.

### A. **Defendants' Motion**

#### 1. Discovery Regarding the Creation, Selection Derivation, Design and Development of Plaintiff's Marks and Products

In Interrogatories 1 through 4 and Document Requests 5, 10, 57, 58 and 69, Defendants requested documents and information from Plaintiff concerning the "creation, selection, conception, derivation, design, or development" of Plaintiff's own marks and products. (*See* Def. Mot. at 2.) Plaintiff objected to these requests on the grounds that, *inter alia*, the requested

---

[1] On September 9, 2010, Defendants submitted a reply in further support of their motion (*see* Letter to the Court from John Chesney, Esq., dated Sept. 9, 2010 ("Def. Reply") (Dkt. 36)), and, on September 22, 2010, Defendants opposed Plaintiff's cross-motion (*see* Letter to the Court from Brian A. Coleman, Esq., dated Sept. 22, 2010 ("Def. Opp.") (Dkt. 37)). Plaintiff submitted a reply in further support of its cross-motion on October 1, 2010. (*See* Letter to the Court from Johanna Schmitt, Esq., dated Oct. 1, 2010 ("Pl. Reply") (Dkt. 38).)

information and documents were irrelevant and the requests were overbroad. (*See* Pl. Opp. & Cross-Mot. at 1.) Defendants now move to compel responses to these discovery requests, arguing that the discovery sought is relevant to (1) the strength of Plaintiff's marks, (2) Plaintiff's contention that its marks are famous, and (3) Defendants' counterclaim based on abandonment. (Def. Mot. at 4-5.)

Despite Defendants' first two arguments, the majority of the discovery sought by these requests is not relevant to the strength and/or fame of Plaintiff's marks. In general, a mark's strength depends on the perception of the "purchasing public," *Lang v. Retirement Living Pub. Co.*, 949 F.2d 576, 581 (2d Cir. 1991)), not the mark-holder's internal creation and development of the mark. In *GMA Accessories, Inc. v. Croscill, Inc.*, 06 Civ. 6236 (GEL), 2008 U.S. Dist. LEXIS 16052 (S.D.N.Y. Mar. 3, 2008)), the Court rejected the notion that a company's internal workings, unbeknownst to the public, could impact the strength of its mark. There, defendants maintained that the plaintiff's mark was "descriptive" – as opposed to generic, suggestive, or fanciful – because the mark was based on the name of the daughter of the plaintiff's principal. *See id.* at *13. The Court held that the mark's actual origin as a "personal" name was irrelevant to the analysis of the mark's strength; rather, it only mattered if *"consumers* would likely perceive the mark as a personal name" or not. *Id.* at *13-14 (emphasis in original). Likewise, in this case, it is the public's perception of Plaintiff's marks that determines their "inherent distinctiveness" and hence their strength. *See id.*; *see also Lang*, 949 F.2d at 581.

Similarly, a mark's "fame" is based on the public's exposure to the mark, not the mark-holder's internal development and creation of the mark. *See New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 321 (S.D.N.Y. 2010) (analysis of a mark's fame examines "(i) the duration, extent, and geographic reach of advertising and publicity of the mark,

3

whether advertised or publicized by the owner or third parties; (ii) the amount, volume, and geographic extent of sales of goods or services offered under the mark; (iii) the extent of actual recognition of the mark; and (iv) whether the mark was registered" (citing 15 U.S.C. § 1125(c)(2)(A)(i)-(iv))).

Thus, discovery regarding the "creation, selection, conception, derivation, design, or development" of Plaintiff's marks would be relevant to the strength and/or fame of Plaintiff's marks only to the extent such discovery would reveal the public's perceptions of or exposure to Plaintiff's marks and products. None of the interrogatories or document requests at issue here, however, are drafted in such a way as to be reasonably calculated to lead to the disclosure of such information. Furthermore, Plaintiff has agreed to produce documents and information in response to other, more narrowly-tailored requests designed to obtain relevant information concerning the marks' strength and fame. For example, Plaintiff has agreed to produce "[non-privileged] documents regarding any 'search, investigation, survey, marketing study, focus group study, or poll conducted at any time by or on behalf of the Plaintiff,'" "all [non-privileged] documents concerning the strengths and/or weaknesses of the COLGATE TOTAL MARKS," and "all [non-privileged] documents concerning the distinctiveness or fame (or lack thereof) of the COLGATE TOTAL MARKS." (Pl. Opp. & Cross-Mot. at 4.) These are more appropriate avenues for uncovering evidence regarding the strength and fame of Plaintiff's "Total" and "Colgate Total" marks.

Defendants also argue that discovery concerning the creation and development of Plaintiff's marks and products is relevant to Defendants' counterclaim that Plaintiff has "abandoned" its stand-alone "Total" mark. According to Defendants, the discovery at issue will reveal that Plaintiff never used "Total" as a stand-alone mark without the additional indicator

4

"Colgate," that Plaintiff never intended to use "Total" as a stand-alone mark, and that Plaintiff never believed it could use "Total" as a stand-alone mark. (*See* Def. Reply at 3.) Plaintiff's past intent and beliefs regarding use of the "Total" mark is, however, irrelevant to the abandonment counterclaim; as Defendants concede, the only two elements for an abandonment claim are the plaintiff's non-use of the mark, and the plaintiff's lack of intent to use the mark in the future. (Pl. Opp. & Cross-Mot. at 7; Def. Reply at 4 (citing *Silverman v. CBS, Inc.*, 870 F.2d 40, 45 (2d Cir. 1989)).) As the discovery at issue here concerns the *past* creation and development of Plaintiff's marks (which were registered more than 10 years ago), the requested discovery would be relevant to Defendants' abandonment counterclaim only insofar as it would reveal Plaintiff's actual "non-use" of its mark in the past. Such information would be better obtained directly, via more narrowly-tailored requests, and Plaintiff has indeed agreed to produce documents and information responsive to such narrower requests. (*See* Pl. Opp. & Cross-Mot. at 7 (agreeing to produce "[a]ll [non-privileged] documents concerning the abandonment of the COLGATE TOTAL MARKS").)

Under these circumstances, Defendants' motion to compel further responses to their Interrogatories 1 through 4 and Document Requests 5, 10, 57, 58 and 69 is denied.

### 2. Discovery Regarding Plaintiff's Intended Future Use of Its Marks on Existing Products

Defendants also move to compel responses to Interrogatory 4 and Document Requests 2, 3, 4, 34 and 62 to the extent that those requests seek documents and information regarding Plaintiff's "intended or planned future use of its marks on existing products." (Def. Mot. at 6.) Defendants correctly maintain that Plaintiff's future plans regarding existing products are relevant to both Defendants' abandonment counterclaim and Plaintiff's request for a permanent injunction. Defendants' abandonment counterclaim requires Defendants to prove Plaintiff's lack

5

of intent to use the mark in the future (*see* Def. Reply at 4 (citing *Silverman*, 870 F.2d at 45)), and Plaintiff's request for a permanent injunction requires Plaintiff to prove that purchasers of the parties' products "may be misled in the future" (Def. Reply at 4 (citing *Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 299-300 (2d Cir. 1999)); *accord Burndy Corp. v. Teledyne Indus., Inc.*, 748 F.2d 767, 772 (2d Cir. 1984)).

Indeed, Plaintiff does not suggest that its future plans would necessarily be irrelevant to Defendants' abandonment counterclaim, or to Plaintiff's own request for permanent injunctive relief. (*See* Pl. Opp. & Cross-Mot. at 10-11). Rather, Plaintiff contends that the discovery requests at issue are overbroad. (*Id.*) Plaintiff also argues that, as it has no intention of discontinuing its current use of the "Total" and "Colgate Total" marks in the United States, and as Defendants have "no basis" for believing otherwise (*id.* at 11), discovery on the hypothetical issue of future abandonment would not be justified (*see id.*).

After considering the parties' arguments, the Court is persuaded that, while Defendants' requests may reach too broadly, at least some discovery regarding Plaintiff's future plans would be appropriate. Of particular relevance, both to Defendants' counterclaim and to Defendants' defense to Plaintiff's requested injunction, is the question of whether Plaintiff has any plans or intention to use the "Total" mark in the future as a stand-alone mark, not coupled with the word "Colgate." Accordingly, Plaintiff is directed to respond to Interrogatory 4 and Document Requests 2, 3, 4, 34 and 62 to the extent that these requests seek documents or information regarding Plaintiff's intent (or lack thereof) to use the mark "Total" in the future, as a stand-alone mark. In addition, Plaintiff should respond to these requests to the extent they seek documents or information regarding Plaintiff's intent (or lack thereof) to alter the way in which its "Total" and "Colgate Total" marks will be used, in the future, on existing products –

including the size, placement, and graphic design of the marks. Such information would be relevant to whether customers are likely to be confused in the future by the parties' anticipated use of their respective marks.

### 3. Disclosure of the Nature of Witnesses' "Knowledge"

In Interrogatories 9 and 10, Defendants ask Plaintiff to identify individuals with knowledge of potential, actual or perceived confusion between the parties' relevant marks or products. (Def. Mot. at 7.) Although Plaintiff has not yet identified any such individuals, it has indicated that it may identify such persons in future disclosures. (*See id.*) Plaintiff has further stated that it may be unwilling to indicate "the specific nature" of such persons' knowledge, upon disclosing their identities. (*See id.*) As Plaintiff does not yet know the nature of the hypothetical "knowledge" of these future witnesses, it maintains that it cannot yet determine whether it might have some valid objection to disclosing the nature of their knowledge. (Pl. Opp. & Cross-Mot. at 11-12.)

Defendants now ask the Court to compel Plaintiff to withdraw its potential future objections regarding disclosure of the nature of the witnesses' knowledge. (*See* Def. Mot. at 7.) This request is premature, and is denied without prejudice to renew in the event that Plaintiff identifies responsive witnesses but refuses to disclose the nature of their knowledge.

### B. Plaintiff's Cross-Motion

In its discovery requests, Plaintiff defined the phrases "Total Care Marks" and "Total Care Products" so as to include Defendants' Spanish-language "Listerine Cuidado Total" marks and products. (*See* Pl. Opp. & Cross-Mot. at 13.) Defendants objected to the inclusion of "Listerine Cuidado Total" in those definitions on the ground that this mark was never used in the United States and is thus irrelevant to Plaintiff's claims. (*See* Defendants/Counterclaimants'

7

Responses to Plaintiff's First Set of Interrogatories (attached to Pl. Opp. & Cross-Mot.), at ¶ 11.) Plaintiff now moves to compel Defendants to produce documents concerning the "Listerine Cuidado Total" marks. (*See* Pl. Opp. & Cross-Mot. at 13.)

Although it is clear that Plaintiff cannot bring trademark claims based on Defendants' use of the "Listerine Cuidado Total" mark outside the United States, *see, e.g.*, *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 153 (2d Cir. 2007), Defendants have conceded that "documents touching upon the mark LISTERINE CUIDADO TOTAL [are] discoverable if relevant to claims left in the case." (Def. Opp. at 4.) Accordingly, Defendants have agreed to produce responsive documents concerning this mark to the extent such documents relate to whether Defendants' "'selection of LISTERINE CUIDADO TOTAL was in any way related to Colgate's COLGATE TOTAL mark.'" (Pl. Reply at 7.)

Plaintiff contends that it is entitled to additional discovery, beyond what Defendants have voluntarily agreed to produce. According to Plaintiff, "Listerine Cuidado Total" was intended to be part of the "TOTAL CARE brand as a whole," and, accordingly, documents about "Listerine Cuidado Total" are "probative of the selection, design and development of Defendants' TOTAL CARE brand in the United States in general," and will "likely lead to admissible evidence about the TOTAL CARE brand as a whole and Defendants' intent to trade off [Plaintiff's] TOTAL brand." (Pl. Reply at 6.) Plaintiff points out that the "Listerine Cuidado Total" mark was the first "Total Care" mark for which Defendants sought United States trademark registration and, based on this fact, Plaintiff surmises that many of Defendants' initial discussions about its marks might have taken place in the context of discussing the "Listerine Cuidado Total" mark. (*Id.*)

For the reasons advanced by Plaintiff, discovery regarding creation and development of Defendants' "Listerine Cuidado Total" mark does appear reasonably calculated to lead the

8

discovery of admissible evidence concerning Defendants' motivations in developing their pertinent English-language marks, including evidence as to whether Defendants intended to dilute or infringe Plaintiff's marks. Although Defendants' proposed voluntary production would likely capture many of the potentially relevant documents here, Defendants' approach would also be likely to exclude relevant documents. Defendants are therefore directed to include the "Listerine Cuidado Total" in the definition of "Total Care Marks," for the purpose of responding to Plaintiff's Document Requests Nos. 2, 3, 5, 24, and 64, as well as Document Request No. 36 (to the extent the documents called for by Request No. 36 refer to Plaintiff or Plaintiff's "Total" or "Colgate Total" marks). Plaintiff's cross-motion is otherwise denied.

### C. Modification of Discovery Schedule

In light of the above rulings, the parties are directed to confer regarding the amount of additional time necessary to complete fact discovery. The parties are directed to submit a proposed modified Scheduling Order to the Court within one week of the date of this Order.

### CONCLUSION

The pending motions to compel (Dkts. 34, 35) and requests for an extension of the discovery deadlines are resolved as set forth above.

Dated: New York, New York
       December 1, 2010

SO ORDERED

_____
DEBRA FREEMAN
United States Magistrate Judge

Copies to:

all counsel (via ECF)